UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ELECTRONIC SCRIPTING PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> HTC AMERICA INC., <br><br> Defendant. | Case No. 17-cv-05806-RS (RMI) <br><br> **ORDER RE: MOTION TO QUASH THIRD-PARTY SUBPOENA** <br><br> Re: Dkt. No. 136 |

Now pending before the court is a Motion (dkt. 136) brought by non-party Valve Corporation ("Valve") seeking either a protective order or an order quashing a subpoena issued by Plaintiff on July 2, 2021. Plaintiff has filed a response in opposition (dkt. 140); Valve Corp. has filed a reply brief (dkt. 144); and, on August 24, 2021, the Parties appeared before the undersigned for oral argument (dkt. 154). For the reasons stated below, Valve Corp.'s Motion (dkt. 136) is granted both under Rule 45 and Rule 26.

## INTRODUCTION

This is a patent infringement case wherein Plaintiff, Electronic Scripting Products, Inc. ("ESPI"), has sued HTC America, Inc. ("HTC"), based on the assertion that some of HTC's virtual reality products infringe on ESPI's patented designs. *See generally* FAC (dkt. 74). Because of the assertion that Valve and HTC had cooperated with one another in their respective business ventures as it pertains to the development of HTC's virtual reality devices, ESPI had initially also named Valve as a defendant in this case. *See* Compl. (dkt. 1) at 6-10. However, on January 25, 2018, ESPI filed a Notice (dkt. 33), through which ESPI expressly and voluntarily dismissed Valve from this action. As to the cooperation between Valve and HTC in the development of

1   certain aspects of the HTC products that have been accused in this action, "HTC and Valve
2   collaborated to some degree in developing their products, and the HTC [a]ccused [p]roducts use a
3   version of Valve's SteamVR Tracking system (HTC also purchases one piece of hardware from
4   Valve for use in one of the HTC [a]ccused [p]roducts)." Valve's Mot. (dkt. 136) at 2. Since being
5   dismissed from this action, Valve has become a frequent target for third-party discovery. *Id*. at 1-
6   2.
7   Valve is engaged in the business of developing and distributing computer games through
8   its online gaming platform; further, Valve has also developed certain technology – called
9   SteamVR Tracking – which is used by and incorporated into various virtual reality devices,
10  including HTC's accused products. *Id*. at 3. However, despite the fact that SteamVR Tracking
11  "was developed on a roughly parallel track to the HTC Vive, with Valve employees providing
12  technical assistance at times to HTC while HTC was developing the Vive," Valve did not
13  participate in the manufacture or the sale of any of HTC's accused devices. *Id*. In response to a
14  subpoena from HTC, Valve has already produced source code and documents related to SteamVR
15  Tracking, and prepared a corporate designee for a broad and lengthy deposition on July 14, 2021,
16  about "the design, development, and operation of SteamVR Tracking as used in the HTC Accused
17  Products," during which, ESPI's counsel "participated in that deposition and questioned Valve's
18  corporate designee on these topics at length, even to a greater degree than HTC did." *Id*. at 4.
19  About two weeks before that deposition, on July 2, 2021, Plaintiff issued a subpoena
20  through which Valve was commanded to designate a suitable corporate officer or agent to appear
21  for another deposition on July 26, 2021, such as to be questioned about seven deposition topics as
22  well as being commanded to produce eight categories of documents. *See* Subpoena (dkt. 136-4) at
23  2-9. The subpoena was initially challenged in the Western District of Washington, but was
24  subsequently transferred to this district by a judge of that court. *See generally* Order (dkt. 141). A
25  review of both the proposed deposition topics and the document production requests reveals that
26  they fall into one of two categories (neither of which are discoverable in the instant context):
27  information that should have been sought through party discovery from HTC rather than through
28  non-party discovery from Valve, and a widely cast net for information that ESPI has failed to

establish any relevance link to a claim or defense in *this* action against HTC (e.g., Document Request No. 8, "Documents relating to any licensing fees, royalties and/or compensation paid to or received by VALVE from [any] third parties pertaining to virtual or augmented reality."). *See* Subpoena (dkt. 136-4) at 7-9. Consequently, because of Valve's desire to avoid being put to the expense and burden of providing information about its business and financial affairs, or its own products (none of which are at issue in this case), or to be subjected to the expense and burden of providing information in lieu of Defendant HTC, Valve has moved for relief by way of protective order under Fed. R. Civ. P. 26, or for an order quashing the subpoena under Rule 45. *See* Valve's Mot. (dkt. 136) at 8-12.

Notwithstanding having already participated in a deposition wherein Plaintiff's counsel questioned a Valve officer at length, the instant subpoena commanded Valve to once again designate and prepare a suitable officer or an agent to testify – this time, about the following seven deposition topics: (1) market and marketing research pertaining to the accused products or any other HTC products; (2) pre-sale marketing and promotion for the accused products or any other HTC products; (3) licensing and/or sale of the accused products or any other HTC products; (4) any licensing fees, royalties and/or compensation paid for the use of any intellectual property (including but not limited to patents, copyrights, [and] trade secrets) pertaining to or used by the accused products or other HTC products; (5) post-sale revenue, profits, and costs of goods sold for the accused products, or elements thereof for use with or by third-party products; (6) licensing or compensation for the use of any technology for or pertaining to virtual or augmented reality or products, including the accused products, or elements thereof for use with or by third-party products; and, (7) any licensing fees, royalties and/or compensation paid to or received by Valve from third parties pertaining to virtual or augmented reality. *See* Subpoena (dkt. 136-4) at 2, 4-7. The subpoena also commanded Valve to locate, arrange, and produce documents in the following 8 categories: (1) all documents considered by or referred to in preparing the designee for each of the above-listed deposition topics; (2) documents relating to market and marketing research pertaining to the accused products or any other HTC products; (3) documents relating to pre-sale marketing and promotion of the accused products or any other HTC products; (4) documents

3

relating to licensing and/or sale of the accused products or any other HTC products; (5) documents relating to any licensing fees, royalties and/or compensation paid for the use of any intellectual property (including but not limited to patents, copyrights, and trade secrets) pertaining to or used by the accused products or any other HTC products; (6) documents relating to post-sale revenue, profits, and costs of goods sold for the accused products for the last six years; (7) documents relating to licensing or compensation for the use of any technology for or pertaining to virtual reality or products, including the accused products, or elements thereof for use with or by third party products; and, (8) documents relating to any licensing fees, royalties and/or compensation paid to or received by Valve from third parties pertaining to virtual or augmented reality. *Id*. at 9.

## LEGAL STANDARDS

At the outset, it is important to note that "[t]his Court is particularly concerned anytime enforcement of a subpoena imposes an economic burden on a non-party . . . [and that] [u]ndue burden to the non-party is evaluated under both Rule 26 and Rule 45." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (citing *Exxon Shipping Co. v. U.S. Dept. of Interior.*, 34 F.3d 774, 779 (9th Cir. 1994)). Federal Rule of Civil Procedure 45 governs discovery sought from non-parties by subpoena, and provides that a party may command a non-party to testify at a deposition and "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). At the same time, Rule 26 allows a party to obtain discovery concerning any non-privileged matter that is relevant to any claim or defense. Fed. R. Civ. P. 26(b)(1). Further, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. The Rule 26 relevancy standard also applies to third-party subpoenas. *See Beinin v. Ctr. for Study of Popular Culture*, No. 06-cv-02298 JW (RS), 2007 U.S. Dist. LEXIS 22518, 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007).

In determining whether a subpoena should be enforced, courts Are guided by both Rule 45, which protects a subpoenaed party from "undue burden," and Rule 26, which provides that the court must limit discovery if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 45(d)(1); Fed. R.

4

1  Civ. P. 26(b)(2)(C)(i). Therefore, a party or lawyer responsible for issuing and serving a subpoena
2  must take reasonable steps to avoid imposing undue burden or expense on a person subject to the
3  subpoena. Fed. R. Civ. P. 45(d)(1). In short, this court "must protect a person who is neither a
4  party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P.
5  45(d)(2)(B)(ii).

6  In terms of subpoena enforcement in a different district, while Rule 45(d) draws distinctions between the issuing court and the compliance court in which enforcement of a third-party subpoena must be pursued, it is beyond dispute that the issuing court, under Rule 26, retains full control of the overall discovery process in the case at its own bar. Indeed, Rule 26 requires district courts to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Furthermore, because pretrial discovery has a potential for abuse (*see Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35-36 (1984)) district courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c) therefore confers broad discretion to district courts to decide when a protective order is appropriate, and what degree of protection is required. *See e.g.*, *Robinson v. Chefs' Warehouse*, 3:15-cv-05421-RS (KAW), 2017 U.S. Dist. LEXIS 30703, 2017 WL 836944, at *1 (N.D. Cal. Mar. 3, 2017) (citing *Seattle Times*, 467 U.S. at 36). Thus, a district court's Rule-26 discretion can extend to, by way of example, forbidding certain discovery entirely, specifying the terms for discovery in general, forbidding inquiry into particular matters, or limiting the scope of discovery as to certain matters. *See* Fed. R. Civ. P. 26(c)(1)(A), (B), and (D); *see also Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, No. C11-5200 JSC, 2012 U.S. Dist. LEXIS 104398, at *7-8 (N.D. Cal. July 26, 2012); and, *Youngevity Int'l, Corp. v. Smith*, No. 16-cv-704 BTM (JLB), 2017 U.S. Dist. LEXIS 176282, at *15-16 (S.D. Cal. Oct. 23, 2017).

//
//
//

**DISCUSSION**

The essence of this discovery dispute can be effectively distilled down to the notion that ESPI's effort at third-party discovery against Valve seems to reflect its desire to both have, and eat, the proverbial cake. On one hand, ESPI concedes that it has dismissed Valve from this action "for lack of venue." *See* Pl.'s Opp. (dkt. 140) at 3. On the other hand, as discussed in greater detail below, and as is manifest from the broad and sweeping scope of the instant subpoena, ESPI seems intent on continuing to treat Valve as though it were still a party to this action and the target of patent infringement accusations by the operative complaint when that is clearly not the case.

As to ESPI's arguments in opposition to Valve's Motion, the argument section of ESPI's brief is limited to a little more than a single page. *See* Pl.'s Opp. (dkt. 140) at 8-9. Indeed, the dearth of ESPI's arguments in opposition to Valve's Motion is worsened by the fact that the pertinent portions of those arguments consist of little more than labels and conclusory statements. In fact, with the exception of three sentences, the entirety of the argument section of its ESPI's brief fails to even address the substance of the issues raised in the Motion to Quash and instead focuses only on whether the motion should have been transferred to be heard in this district. *See id*. at 8-9. As for the three sentences that actually address the substance of this dispute, the first and second merely state that "[t]he facts, set forth above, amply demonstrate that ESPI's subpoena is eminently reasonable [and that] ESPI is pursuing this discovery with good cause as proven by then (sic) declaration of Valve's in house counsel." *Id*. at 8. Beyond this, ESPI only adds that "the internet is replete with the tight interrelationship between HTC/HTCA and Valve regarding virtual reality and interchangeability of their respective VR products." *Id*. at 8. Similarly, the conclusion section of ESPI's opposition appears to be a similar blending of labels, conclusory statements, and an overwhelming majority of statements focused merely on transferring the subpoena dispute to this court. *See id*. at 9.

The remainder of Plaintiff's brief in opposition consist of an introduction, followed by a recitation of what is claimed to constitute a factual and procedural background. The introduction, much like the arguments section, is focused on argument as to why Valve's motion to quash should be decided in this district rather than the Western District of Washington. *See id*. at 2-3.

6

1  Similarly, much of the factual and procedural background is also focused on explaining why
2  Valve's motion to quash should be resolved in this district. *See generally id*. at 3-8. However, the
3  few pertinent portions of the factual and procedural background – which was (in conclusory
4  fashion) described in the arguments section to "amply demonstrate that ESPI's subpoena is
5  eminently reasonable," clearly demonstrate that ESPI seeks to have it both ways – namely, to
6  continue to treat Valve as a party to the litigation after having dismissed it as a party. Indeed, ESPI
7  goes to great lengths to characterize non-party Valve and Defendant HTC as confederates and
8  joint venture partners in the design and implementation of the accused products at the heart of this
9  case. *See id*. at 3-8. In this regard, by way of example, ESPI contends that "[t]he virtual reality
10 tracking system used in the accused devices was developed by Valve . . . which results in [HTC's]
11 end users buying Valve's virtual reality games . . . [and] [t]he marketing strategy of both
12 corporation (sic) was symbiotic." *Id*. at 4. ESPI then adds that "[s]ince the very successful
13 introduction of the [accused products] and its various incarnations, Valve has come out with its
14 own VR device, called the Index . . . [and that] Valve's involvement in and with the [accused
15 products] is inseparable from its own Index [product]." *Id*. Adding a measure of mystery, ESPI
16 posits that "[t]he depth of this relationship is even more compelling but is kept under wraps." *Id*. at
17 5. ESPI then goes much further by positing that certain actions undertaken before the Patent Trial
18 and Appeal Board in the past by Valve were "obviously due to the fact that Valve recognized it
19 was infringing [ESPI's] '934 patent, otherwise there would have been no logical or economic
20 reason to spend what is estimate (sic) to be over $1 million in attorney fees and costs just to tilt at
21 windmills." *Id*. at 5. ESPI also makes much of the fact that when its counsel (along with HTC's
22 counsel) deposed Valve's designee in July of 2021, that "Valve partook in that deposition without
23 objections, including the 'holy grail' of Valve's product source code" rendering it "transparent that
24 Valve is acting in full cooperation with HTCA, and is intent on obstructing ESPI's deposition and
25 document requests that are far more probative to case (sic), and seek far less sensitive information
26 than the source code, and which information[] may be designated confidential if appropriate[]
27 under the protective order." *Id*. at 6. To drive home its point, ESPI adds that "[t]he coordinated
28 effort to confound ESPI's access to discoverable material is manifested by [Valve] turning over its

7

source code to HTCA, but not to ESPI." *Id*. at 7. Finally, it should not go without mention that the factual and procedural background section of ESPI's opposition brief did include a single instance where it at least appears to address the issues raised by Valve's motion wherein ESPI asserted that while Valve "has asserted and continues to assert the discovery is burdensome, [] it has provided no evidence of what the burden is." *Id*.

At the hearing on August 24, 2021, counsel for ESPI focused his arguments on his desire to secure – from Valve – any agreements between Valve and HTC, contending that no one has provided these agreements in discovery. However, Valve responded to the effect that their licensing agreements are publicly available and the link to the location on Valve's website where these documents may be found has long since been provided, and furthermore, Valve noted that in January of 2020, Valve produced to ESPI its memorandum of understanding with HTC (which, likewise, is publicly accessible and available online). Also during oral argument, the court asked counsel for ESPI to respond to Valve's contention that ESPI's opposition had failed to address any of Valve's contentions about how the subpoena was grossly overbroad and burdensome in that it sought to subject non-party Valve to an impermissibly broad scope of discovery that more so resembled party discovery than non-party discovery. ESPI's counsel disputed this characterization by noting that his own declaration (attached to ESPI's brief in opposition) had addressed all of those points. However, a thorough review of counsel's seven-page declaration (*see generally* (dkt. 140-1) at 1-7) reveals nothing more than a repetition and reiteration of the labels, conclusory statements, and hyperbolic accusations of confederacy and conspiracy that has been recited in detail above (i.e., that Valve and HTC are confederates and joint venture partners and that they have combined and conspired to deny ESPI to the information it wishes to access).

In short, nowhere in ESPI's papers, nor at any point during oral argument, has ESPI established relevance for a large number of its deposition topics or documents request to claims or defenses involved in this case, nor has ESPI offered any cogent explanation as to why it could not have sought the remainder of this information from Defendant HTC during the discovery period of this case rather than seeking it now from non-party Valve. Accordingly, the undersigned finds that there is no good reason at all to subject non-party Valve to endure the cost and burden of

8

providing ESPI with discovery that could have been sought from Defendant HTC but was not. To the extent that ESPI might complain that it asked for this information from HTC but was denied, the correct remedy was a motion to compel, not a campaign to impermissibly saddle a non-party with the unjustified expense and burden of providing discovery that could have been – but was not – secured from a party to the litigation. In arriving at this conclusion, the undersigned is guided by the plain text of Rule 45, which protects a subpoenaed entity from "undue burden," and Rule 26, which directs the court to limit discovery if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(2)(C)(i).

Therefore, in light of the above-described legal standards, the undersigned will address Plaintiff's proposed deposition topics and document requests *seriatim*. As to deposition topic numbers 1 through 4 (any market and marketing research, or promotional or licensing information, licensing fees or compensation paid or received by Valve, pertaining to the accused products or any other HTC products), the undersigned finds that this information is of questionable relevance, at best, to any claim or defense currently involved in this litigation, and that it could have and should have been sought from Defendant HTC rather than Valve, and that in seeking to subject Valve to the burden of producing information of such questionable relevance would be disproportional to the needs of this case. Further, to the extent these topic (and subsequent deposition topics and discovery requests seek information about HTC products _other_ than the products accused in this litigation, then those aspects of each request are patently irrelevant and therefore doubly impermissible). Deposition topic numbers 5 through 7 are actually worse because they are totally untethered from HTC or the accused products and ignore the fact that Valve is not a party to this action by seeking to nevertheless delve into the details of Valve's business and its relationships with its vendors and customers without even a hint of relevance to ESPI's lawsuit against HTC; accordingly, each of those requests falls far outside the scope of permissible third-party discovery in this case.

ESPI's document requests fare no better. Document request number 1 simply asks for all documents considered by or referred to in preparing for the above-listed deposition topics; and the

invalidity of those deposition topics render this document request moot. Document requests 2 through 5 largely overlap with deposition topics 1 through four and seek (by and large) the same information (compare *Subpoena* (dkt. 136-4) at 7 with *id*. at 9), and for the same reasons set forth above, so too are those requests outside the scope of permissible third-party discovery. Document request 6 (documents relating to post-sale revenue, profits, and costs of goods sold for the accused products for the last six years) is rendered moot by the fact that Valve has stated more than once on the record that it has had no involvement in the sale of any of the accused products – and even if that were not the case, this information could have more easily been solicited from Defendant HTC rather than non-party Valve. Lastly, document requests 7 and 8 substantially overlap with deposition topics 5 through 6, and are therefore due to fail because they similarly ignore the fact that Valve is not a party to this action and which nevertheless seek to pry into the details of Valve's business and its relationships with its vendors and customers without any indication of relevance to ESPI's lawsuit against HTC.

## CONCLUSION

Accordingly, because each and every piece of information sought by ESPI's third-party subpoena is either irrelevant to this action, or constitutes information that should have been more properly sought from Defendant HTC rather than a non-party, Valve's Motion to Quash ESPI's Subpoena and for a Protective Order (dkt. 136) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 25, 2021

ROBERT M. ILLMAN
United States Magistrate Judge